Greg G. GREEN, Plaintiff,

v.

SAUDER MOULDINGS, INC., et al., Defendants.

No. 3:04CV264.

United States District Court, E.D. Virginia, Richmond Division.

Aug. 2, 2004.

William Brent Kilduff, Emroch & Kilduff LP, Richmond, VA, for Plaintiff.

William Francis Drewry Gallalee, Mary Eve Grandis Campbell, Harold Edward Johnson, Williams Mullen, Richmond, VA, William Edgar Spivey, Richard Johan Conrod, Jr., Kaufman & Canoles PC, Norfolk, VA, John Michael Fitzpatrick, Erik David Nadolink, LeClair Ryan PC, Richmond, VA, William Francis Marion, Jr., Haynsworth Sinkler Boyd PA, Greenville, SC, for Defendants.

Charles Franklin Midkiff, Kristin Linette Gray, Midkiff Muncie & Ross PC, Richmond, VA, for Movant.

### MEMORANDUM OPINION

### (Granting Defendant United's Motion to Compel and Denying Plaintiff's and Defendant PMA's Motions to Quash)

HUDSON, District Judge.

### BACKGROUND

This personal injury case, removed under 28 U.S.C. § 1332, is before the Court on Plaintiff Greg G. Green's and Defendant Pennsylvania Manufacturers Association Insurance Company's Motions to Quash and on Defendant United Rentals Incorporated's (and United Rentals North America's) Motion to Compel Discovery. All parties have filed memoranda of law in support of their respective positions. The Court will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and argument would not aid in the decisional process.

The pertinent facts affecting the resolution of these motions are not in dispute. This case arises out of an industrial accident that occurred on June 5, 2002 at Defendant Sauder Mouldings, Incorporated's ("Sauder's") wood products facility near Doswell, Virginia. At the time of the accident, Plaintiff Greg G. Green ("Plaintiff") and one other individual, Brent Stonnell ("Stonnell"), were employed by Davis & Green, Incorporated ("Davis & Green") and were operating a manlift they had rented from United Rentals Incorporated and United Rentals North America (together referred to as "United"). Davis & Green's worker's compensation insurance carrier is Pennsylvania Manufacturers Association Insurance Company ("PMA").

On or about June 7, 2002, PMA hired Engineering Design & Testing Corporation ("EDT") to investigate the accident. John Phillips, P.E. ("Phillips"), an employee of EDT, conducted the investigation and prepared a report ("the Report") containing his findings and conclusions. In connection with his investigation and his preparation of the Report, he also authored certain notes and memoranda. On two separate occasions, Phillips conducted inspections of the manlift. Phillips conducted the first inspection on June 7, 2002 and the second inspection on July 22, 2002.

On March 24, 2004, Plaintiff commenced this lawsuit by filing a Motion for Judgment in the Circuit Court for the City of Richmond.[1] In April of 2004, almost two years after the Report was compiled and several days after the immediate case was filed, Plaintiff retained Phillips as its "consulting expert." On or about May 6, 2004, United served Plaintiff with its interrogatories and requests for production. Within those documents, United asked Plaintiff to produce "all investigative reports which relate or pertain to the Accident." Initially, Plaintiff withheld production of the Report, claiming privilege.

Thereafter, on June 11, 2004, in a second attempt to obtain a copy of the Report, United served a subpoena *duces tecum* on EDT, the Report's third-party creator.[2] On June 29, 2004, Plaintiff filed a Motion to Quash

---

1. On April 19, 2004, this case was removed, pursuant to 28 U.S.C. § 1332 and § 1441, to this Court. Thus, all events and pleadings dated after April 19, 2004 either occurred or were filed in this Court. The removal process itself does not affect the validity of the claims discussed herein.

2. A copy of the subpoena was attached as Exhibit 5 to Defendant United's Response to Plaintiff's Motion to Quash.

that subpoena *duces tecum,* and on July 12, 2004, Defendant PMA also filed a Motion to Quash. To date, at least six (6) persons and/or entities associated with this litigation have come to possess the Report including: (1) Plaintiff's attorney; (2) Davis & Green; (3) Phillips; (4) EDT; (5) an unnamed Plaintiff's expert; and (6) PMA.[3] United has filed complementary pleadings, a Response in opposition to Plaintiff's Motion to Quash, and a Motion to Compel production of the Report.

## MERITS

### I. Plaintiff's Motion to Quash

#### A. Standing

■■■ In its memorandum, United contends that Plaintiff lacks standing to quash its subpoena *duces tecum.* Absent any specific Fourth Circuit guidance on the issues addressed therein, this Court agrees. A motion to quash should be made by the person or entity from whom or from which the documents or things are requested. Generally, a party to litigation has no standing to move to quash a third-party subpoena *duces tecum* unless the movant claims some personal right or privilege to the documents sought. *Langford v. Chrysler Motors Corp.,* 513 F.2d 1121, 1126 (2d Cir.1974); *Brown v. Braddick,* 595 F.2d 961, 967 (5th Cir.1979); 9A Wright & Miller, Federal Practice and Procedure, Civ.2d 2459 (1995).

Here, Plaintiff is not the party to whom the subpoena was issued. Consequently, absent a showing of privilege or private right, he has no standing upon which to quash it. Plaintiff attempts to demonstrate privilege, and thus manufacture standing, by asserting the "work-product doctrine" of Federal Rule of Civil Procedure [hereinafter "Rule"] 26(b)(3).

**3.** *See* Pl.'s Privilege Log to Defs. United and Sauder (attached as Ex. 1 to Def. United's Response to Pl.'s Mot. to Quash). Plaintiff admits that four persons/entities have obtained a copy of the Report including Plaintiff's attorney, Davis & Green, EDT, and another retained expert. Based on the record before it, this Court concludes that Phillips and PMA also possess the Report.

**4.** This Court was faced with the identical issues in *Rickman v. Deere & Co.,* 154 F.R.D. 137 (E.D.Va.1993), *aff'd Rickman v. Deere & Co.,* 36

#### B. Work Product Privilege

Rule 26 states, in relevant part:

.... [A] party may obtain discovery of documents and tangible things otherwise discoverable ... and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means.

Fed.R.Civ.P. 26(b)(3).

■■■ This Court need not expand its analysis beyond the plain language of the Rule. A party may assert a work-product privilege if that party or its representative has created a particular document either in anticipation of litigation or for trial purposes. To that end, Plaintiff contends that PMA, its representative, prepared the Report and its accompanying materials in anticipation of Plaintiff's impending litigation.

In fact, it was at the request of PMA that EDT, acting on behalf of Davis & Green, prepared the Report in anticipation of PMA's potential subrogation litigation. Therefore, the only two parties entitled to assert privilege over this document—and thus to maintain a motion to protect it—are PMA, which created the Report; and Davis & Green, for which the Report was created. For its part, PMA does not stand in relationship to Plaintiff such that Plaintiff may assert a claim of privilege over the Report. *See* Fed.R.Civ.P. 26(b)(3). *See also Rickman v. Deere & Co.,* 154 F.R.D. 137 (E.D.Va.1993).[4] Accordingly,

F.3d 1093 (4th Cir.1994). Pursuant to Local Rule 36, the United States Court of Appeals for the Fourth Circuit disfavors citation to unpublished dispositions. *See* Loc. R. 36(c) (4th Cir. 2003). However, the *Rickman* disposition is on-point with the current case and stands for the proposition that an investigatory report prepared by an employer's worker's compensation insurer, which was then sought by a manufacturer, did not fall within the scope of the "work-product doctrine." *Rickman,* 154 F.R.D. at 138.

Plaintiff cannot lawfully assert work-product privilege, under Rule 26(b)(3), to protect the Report from disclosure.

Plaintiff attempts to distinguish *Rickman* from this case because, unlike in *Rickman*, Plaintiff in this case hired the engineer who compiled the Report (on behalf of PMA) to serve as his own "consulting expert." Plaintiff contends that, because Phillips is now his expert, under Rule 26, Plaintiff is also entitled to assert work-product privilege over it. That contention is a technical factual distinction without a legal difference.

Here, the analysis is identical to that described above. Simply put, the plain meaning of the statute does not support Plaintiff's contention. Rule 26(b)(3) is limited in its application to those facts or opinions marshaled by a party's representative—here, the consultant—after he is retained by the litigating party and only when prepared in anticipation of *that party's* litigation. A contrary holding would undermine Rule 26 and would allow, as in this case, a party to manufacture privilege by hiring an expert who had already performed work for another party to the same litigation.

On June 7 and June 22, 2002, when he performed the tests and drafted the Report for PMA, Phillips was an employee of EDT. PMA sanctioned the Report both in anticipation of its own subrogation litigation and on behalf of its insured, Davis & Green. On March 24, 2004, almost two years later, this lawsuit commenced. At the time this suit was filed, Plaintiff had not yet retained Phillips to serve as his consulting witness. In fact, when this case commenced, Plaintiff could have viewed Phillips, who performed the manlift testing for PMA, as a potentially adverse witness. Therefore, Plaintiff cannot logically argue that the Report, which Phillips compiled prior to working for Plaintiff, was prepared in anticipation of or in preparation for Plaintiff's future litigation. Any contrary conclusion would allow one party in a lawsuit first to "purchase" both an opponent's expert and that expert's opinion and then to claim his adversary's Rule 26(b)(3) work-product privilege. Such an outcome was never intended by the plain language of Rule 26. Accordingly, Plaintiff cannot pro-

tect the Report from disclosure under Rule 26(b)(3).

## II. PMA's Motion to Quash

■ Having concluded that Plaintiff lacks standing to maintain his Motion to Quash, the Court now addresses the merits of Defendant PMA's Motion to Quash. PMA is the worker's compensation insurance carrier for Davis & Green. PMA hired EDT to perform the testing that led to the compilation of the Report. PMA is a party-Defendant to this litigation, with interests adverse to Plaintiff. Therefore, PMA is clearly a party with standing to quash the subpoena. PMA, however, has waived its Rule 26(b)(3) protection by disclosing the Report both to other parties involved in this litigation and to non-parties.

■ The work-product doctrine created by the Supreme Court in *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), and codified in Rule 26(b)(3), is a qualified privilege. *See United States v. Nobles,* 422 U.S. 225, 237, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975). Like other qualified privileges, it may be waived. *Id.* at 239, 95 S.Ct. 2160. Waiver of the privilege occurs when materials that are otherwise protected work-product are disclosed to someone with interests adverse to the party asserting the privilege. *See In re Doe,* 662 F.2d 1073, 1081 (4th Cir.1981). The Fourth Circuit has even extended this doctrine to inadvertent disclosures of privileged documents or information to a third party. *In re Grand Jury Proceedings,* 727 F.2d 1352, 1356 (4th Cir.1984).

Here, it is uncontested that the Report was disclosed to other persons and entities associated with this litigation. Defendant PMA has allowed the plaintiff to access and utilize the Report in prosecuting his case. Additionally, Plaintiff has disseminated the Report to several other potential witnesses whose interests are adverse to PMA. On the record before this Court, at least two (2) opposing parties and four (4) other, potential non-party witnesses have received a copy of the Report. Consequently, and due to the availability of the Report to non-privileged

**308**

persons or entities, the Court finds that PMA has waived its claim of privilege.

## CONCLUSION

For the reasons discussed herein, the Court finds that Plaintiff lacks standing to quash the subpoena *duces tecum* United served on EDT. This Court also finds that PMA has waived its claim of privilege over the Report. Consequently, both Plaintiff's and Defendant PMA's motions to quash will be denied, and Defendant United's Motion to Compel will be granted.

An appropriate order will accompany this Memorandum Opinion.